UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YEGENIY V. SIDOROV, in his individual capacity and as Administrator of the Estate of NATALYA N. SIDOROVA,<br><br>Plaintiffs,<br><br>v.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY, TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY,<br><br>Defendants. | 2:17-cv-00002-KJM-DB<br><br>ORDER |

Plaintiff Yegeniy V. Sidorov sues Transamerica Life Insurance Company ("Transamerica") for its alleged misconduct relating to a life insurance policy it issued on the life of his mother before she was murdered by his step-father. *See* First Am. Compl. (FAC), ECF No. 36. Sidorov alleges that he proceeds in his individual capacity and as the Administrator of the Estate of Natalya N. Sidorova, but has conceded he has no standing in his administrative capacity because the Estate is closed. *Id.* at 1; Opp'n to Mot. to Dismiss (Opp'n) at 7, ECF No. 43. Transamerica's second motion to dismiss the complaint is before the court. Mot. to Dismiss (Mot.), ECF No. 40. Sidorov filed an opposition, Opp'n (ECF No. 43), and Transamerica has replied. Reply, ECF No. 44. After holding a hearing on the motion to dismiss,

1

and for the reasons discussed below, the court GRANTS the motion to dismiss and DENIES leave to amend.

I. BACKGROUND

A. Factual Allegations

Transamerica Life Insurance Company is the successor-in-interest to Transamerica Occidental Life Insurance Company, both of which are defendants here. FAC ¶ 4. Sidorov is the only child and son of Natalya N. Sidorova, the decedent whose life Transamerica insured. *Id.* ¶ 3.

On January 22, 2010, Natalya's husband, Gerald Schultz,[1] murdered her at a resort hotel in Acapulco de Juarez, Mexico, with the help of an accomplice. *Id.* ¶ 14. Soon after, law enforcement captured Schultz and his accomplice, and they were both being held in a Mexican prison for over six years. *Id.* ¶¶ 16, 29. The complaint does not indicate whether Schultz or his accomplice was ever convicted of any crime. Plaintiff has been advised that as of on or about June 30, 2017, Schultz has died. *Id.* ¶ 14.

Years before the murder, Schultz applied for and purchased six life insurance policies on Natalya's life, including one from Transamerica for $2 million in 2003; each policy lists Schultz as the primary beneficiary. *Id.* ¶¶ 19, 23; *id.*, Ex. A. Sidorov alleges Natalya had minimal income at the time the application was submitted for the $2 million policy, and Transamerica knew or should have known that his mother was over-insured at the time it issued the policy. *Id.* ¶ 24. The application for the $2 million policy, attached to the complaint, shows that Natalya had an annual income of $120,000 as a physical therapy manager and had personal insurance of $85,000 reported to Transamerica. *Id.*, Ex. A.

In 2007, Transamerica began processing a claim Schultz submitted for Natalya's death. *Id.* ¶ 25; *id.*, Ex. B. After Schultz then notified Transamerica that Natalya was not deceased, verbally explaining she had "recovered," Transamerica closed the pending claim and

---

[1] The First Amended Complaint refers both to a "Gerald" Schultz and a "Jerald" Schultz. *Compare* FAC ¶ 19, *with id.* at 31. Consistent with its decision to use "Gerald" in its order granting Transamerica's First Motion to Dismiss, ECF No. 31 at 2 n.1, the court continues to use "Gerald" here.

2

reinstated the policy. *Id.* ¶ 26, Ex. B. Sidorov alleges Transamerica failed to engage in any investigation of the obviously fraudulent claim or otherwise report it to the California Department of Insurance. *Id.* ¶ 27.

Sidorov "first learned that the existence of unspecified life insurance was central to his mother's death when he spoke with Mexican authorities who were investigating her murder" some time after his mother's death in January 22, 2010. *Id.* ¶¶ 5, 17. Through an interpreter, Sidorov learned Schultz's accomplice had "quickly confessed," stating he had been promised a 25 percent payment "from unspecified life insurance," which would amount to $500,000 paid to Schultz's accomplice. *Id.* ¶ 5.

In 2010, Sidorov filed a suit for wrongful death, intentional infliction of emotional distress and conversion in the Superior Court of the State of California. *Id.* ¶ 11; Request for Judicial Notice (RJN[2]) Ex. K, ECF No. 40-1. There, Sidorov alleged that Schultz and his accomplice "conspired to murder the victim and wife of [Schultz] so that Defendants could collect approximately $2 million in life insurance policy benefits . . . ." RJN Ex. K, ¶ 9.

"In or about late 2011 or early 2012," Sidorov learned the Federal Bureau of Investigation (FBI) was investigating Schultz for a complex bank and mortgage fraud scheme. FAC ¶ 9. At the time Sidorov and his counsel met with FBI agents to provide information about

---

[2] The court judicially notices all exhibits requested by Transamerica. *See* Fed. R. Evid. 201. Although Sidorov refers to Transamerica's requesting "selectively tak[ing] judicial notice of some documents . . . but not others," Opp'n at 5, Sidorov has not objected to this request. *See also* Opp'n at 2 (citing to defendant's RJN, Exhibit Q for support). The court judicially notices Exhibit A because Sidorov's FAC incorporates this life insurance policy by reference. *See, e.g.*, FAC ¶ 3 ("Plaintiff holds an assignment of rights of the insurance contract at issue in this case . . . ."). The court judicially notices Exhibits B–M and O–Q as public records. The court may judicially notice that they exist. *See Robinson Rancheria*, 971 F.2d at 248; *Rey's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n.6 (9th Cir. 2006). But the court cannot judicially notice the facts or opinions recited within them. *See Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds*, *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002) ("[W]hen a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'"). Last, the court judicially notices Exhibit N, the legislative history of California Insurance Code section 10172.5. *See Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005) (citing Fed. R. Evid. 201(b)).

3

Schultz, Sidorov had no access to Natalya and Schultz's home. *Id.* According to the "senior FBI agents," Schultz was "involved in many fraudulent schemes." *Id.*

"In or about 2011," Sidorov observed through the window of his mother's home that "the house had been ransacked." *Id.* ¶ 12. Sidorov observed "thousands of papers laying around the first and second floors as though someone had been looking for something." *Id.* After Sidorov called the police, a man who would not identify himself to Sidorov arrived and informed police "he was forwarding papers to Schultz and otherwise assisting him." *Id.* Sidorov "tossed the materials taken from the house in a box in his closet" until 2014, when "he first provided the materials to his counsel, which included . . . pieces of insurance policies and correspondence . . . ." *Id.* ¶ 13. After April 2014, Sidorov "learned though opposing counsel that Transamerica was collecting premium payments from [Gerald Schultz] out of [Gerald Schultz's] Wells Fargo Bank account through 2014." *Id.* ¶¶ 18, 27.

On May 27, 2014, Sidorov opened a case in the Probate Court of the Sacramento County Superior Court of the State of California, and he was named the administrator of his mother's estate. *Id.* ¶ 28. Approximately three months before a hearing scheduled for July 29, 2014, Sidorov provided Transamerica "with all of the legal authority, including the photocopy of the leading insurance treatise, [and] the notices of the opening of the Estate, including that the Estate would be making a claim for the Transamerica Policy proceeds." *Id.* ¶ 32. Sidorov responded "to each and every request from Transamerica for information through his counsel," which included "requests that the [administrator of the Estate] retain and consult counsel familiar with Mexican law and obtain documents for Transamerica from Mexico." *Id.* ¶ 32. Sidorov asserts "Transamerica never had any intention of paying the claim." *Id.* ¶¶ 32, 33.

On July 29, 2014, after an evidentiary hearing, the Probate Court determined that Schultz could not share in the assets of the estate under California's "Slayer Statute." *Id.* ¶ 29;

*see* Cal. Prob. Code §§ 250,[3] 252,[4] 253.[5] Transamerica removed the case to federal court, deposited interpleader funds in the amount of $2,236,327.30 with the Clerk of Court, and ceased paying interest on the death benefits it owed under the policy. FAC ¶¶ 39–40; *see Sidorov v. Transamerica Life Ins. Co.*, No. 2:14-cv-02183-JAM-KJN (filed on September 26, 2014). On December 3, 2014, the federal court remanded the case and transferred the funds back to the state Probate Court. *Id.* ¶ 41. In 2015, the Probate Court ordered Transamerica to pay Sidorov the Policy amount, including interest. *Id.* ¶ 43. Sidorov has alleged Transamerica failed to include in the payment owed him the value of "all of the premium checks paid by [Gerald Schultz] from his Mexican prison," notably payments "from January 2010 until April 11, 2013, when the policy lapsed." *Id.* ¶ 40.

B. Procedural History

On December 30, 2016, Sidorov filed the original complaint in this case. ECF No. 1. On February 28, 2017, Transamerica filed its first motion to dismiss. ECF No. 7. Sidorov did not file an opposition but did file a motion to amend the complaint. ECF No. 14. Transamerica timely filed its opposition. ECF No. 20. The court granted Transamerica's motion

---

[3] California Probate Code section 250 states "[a] person who feloniously and intentionally kills the decedent is not entitled to any of" the decedent's property as explained in subdivisions (a)(1)–(5), with some exceptions where the killer predeceased the decedent or the law treats the killer as if the killer had predeceased the decedent. *See id.* (b)(1)–(3).

[4] California Probate Code section 252 states:

> A named beneficiary of a bond, life insurance policy, or other contractual arrangement who feloniously and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the bond, policy, or other contractual arrangement, and it becomes payable as though the killer had predeceased the decedent.

[5] California Probate Code section 253 states:

> In any case not described in Section 250, 251, or 252 in which one person feloniously and intentionally kills another, any acquisition of property, interest, or benefit by the killer as a result of the killing of the decedent shall be treated in accordance with the principles of this part.

5

to dismiss as unopposed but granted Sidorov's motion for leave to amend the complaint. ECF No. 7 at 5, 7–8.

In his First Amended Complaint, Sidorov brings the following claims against Transamerica, each in his individual capacity and in his capacity as the administrator for his mother's estate: (1) Declaratory Relief; (2) Breach of Contract; (3) Breach of the Implied Covenant of Good Faith and Fair Dealing; (4) Negligence; and (5) Wrongful Death. FAC ¶¶ 44–81.

II.    LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court may grant the motion only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), though it need not include "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But "sufficient factual matter" must make the claim at least plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). In a Rule 12(b)(6) analysis, the court must accept well-pleaded factual allegations as true and construe the complaint in plaintiff's favor. *Id.*; *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

Where dismissal is appropriate, "[t]he court should freely give [leave to amend the pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has "stressed Rule 15's policy of favoring amendments," which courts apply "with liberality." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). "In exercising its discretion, 'a court must be guided by the underlying purpose of Rule 15—to facilitate decisions on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981)). However, "the liberality in granting leave to amend is subject to several limitations. Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice,

is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Props.*, 866 F.2d at 1160 (internal citations omitted). Not all the factors merit equal weight, and it is prejudice to the opposing party that carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

III.     DISCUSSION

    A.     Standing

Transamerica argues Sidorov lacks standing because Natalya's estate has closed and because Sidorov has failed to submit a "successor-in-interest" declaration as required under California Code of Civil Procedure § 377.32. As noted, Sidorov has conceded he has no standing in his administrative capacity because the Estate is closed. Opp'n at 7. But Sidorov argues he is not required to file an affidavit under § 377.32 because "[i]t is a judicially noticed fact that [Sidorov] is the sole beneficiary of [the Estate], and all rights have been ordered by the Probate Court to rest with him." *Id.* at 7.

An individual seeking to file an action as a decedent's successor in interest must attest to certain facts showing that the person is, in fact, entitled to maintain the action on behalf of the decedent's estate. Cal. Civ. Proc. Code § 377.32; *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1094 n.2 (9th Cir. 2006). The proposed "successor in interest" must execute and file an affidavit or declaration under penalty of perjury, which states: (1) the decedent's name; (2) the date and place of decedent's death; (3) that no proceedings are pending in California for the administration of the decedent's estate; (4) either that the declarant is the decedent's successor in interest or is authorized to act on behalf of the decedent's successor in interest; and (5) that no other person has a superior right to commence the action or proceeding for the decedent. Cal. Civ. Proc. Code § 377.32(a). Moreover, the declarant must attach a certified copy of the death certificate, and if the decedent's estate was administered, the declarant must produce a copy of the final order showing distribution of the decedent's cause of action to the successor in interest. *Id.*

By its plain language, section 377.32 applies to a successor in interest after the decedent's state has been administered, requiring "[i]f the decedent's estate was administered, a copy of the final order showing the distribution of the decedent's cause of action to the successor

in interest." Cal. Civ. Proc. Code § 377.32(a)(4). Thus, Sidorov's argument that he is not required to file an affidavit to sue on Natalya's behalf under section 377.32 fails as a matter of law. Sidorov can file an affidavit to cure this defect after filing of the complaint. *See Silcox v. State Farm Mut. Auto. Ins. Co.*, No. 14CV2345 AJB MDD, 2014 WL 7335741, at *3 (S.D. Cal. Dec. 22, 2014) (allowing plaintiff to file section 377.32 declaration after defendant filed its motion to dismiss). At hearing, the court ordered Sidorov to file the required affidavit or declaration within seven days. Sidorov has done so. ECF No. 48. The court finds Sidorov's declaration satisfies all required elements of section 377.32(a). The court therefore finds Sidorov has individual standing and addresses Transamerica's additional arguments below.

B. Statute of Limitations

Transamerica argues all claims are time-barred under their respective statutes of limitations. Mot. at 9, 11, 17–18. Sidorov relies on the discovery rule, the theory of continuous accrual, and the doctrines of equitable estoppel and equitable tolling to argue that no claims are time-barred. Opp'n at 11–15.

A plaintiff must bring a claim within the period set by the relevant statute of limitations for that claim. For a breach of contract claim, the statute of limitations period is four years. Cal. Civ. Proc. Code § 337(1); *see Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1144 n.4 (1990). For a negligence or wrongful death claim, the statute of limitations period is two years. Cal. Civ. Proc. Code §§ 335.1, 339. A claim for breach of the covenant of good faith and fair dealing has a statute of limitations period of four years if based on "the implied contractual promise" and two years if plaintiff seeks tort remedies on the claim. *Love*, 221 Cal. App. 3d at 1144 n.4. However, "statutes of limitation do not begin to run until a cause of action accrues." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005) (citation omitted). Generally, a cause of action accrues at "the time when the cause of action is complete with all of its elements." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999).

At the latest, all of Sidorov's claims related to Transamerica's allegedly overinsuring Natalya in 2003 and allegedly failing to investigate Schultz's initial claim that Natalya had died in 2007 accrued as of Natalya's death on January 22, 2010. *See* FAC ¶ 14. Thus, the

8

latest Sidorov could have brought claims related to Transamerica's alleged 2003 and 2007 conduct would have been January 22, 2014, nearly three years before he filed this case on December 30, 2016.  *See* ECF No. 1.  However, Sidorov asserts the discovery rule, the continuous accrual doctrine, equitable estoppel and equitable tolling apply such that no claims are time-barred.  Opp'n at 11–15.

        1.      <u>Discovery Rule</u>

Under the discovery rule, a plaintiff discovers a cause of action when the plaintiff "has reason at least to suspect a factual basis for its elements."  *Norgart*, 21 Cal. 4th at 398.  Ignorance of "the legal theories underlying [plaintiff's] cause of action" will not pause commencement of the limitations period.  *Id.* at 398 n.2.  The cause of action accrues even if plaintiff does not have reason to suspect the defendant's identity.  *Fox*, 35 Cal. 4th at 807.  The plaintiff has presumptive knowledge of an injury if he has "the opportunity to obtain knowledge from sources open to [their] investigation."  *Id.* at 808 (citations and alterations omitted).

California law clearly establishes that "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  *Id.* at 808 (citation omitted).  The burden on plaintiff to demonstrate his claim survives based on one or more exceptions to the basic date of accrual "may be imposed even at the pleading stage."  *Aryeh v. Canon Bus. Sols. Inc.*, 55 Cal. 4th 1185, 1197 (2013); *see also Fox*, 35 Cal. 4th at 811 (evaluating if plaintiff's allegations were sufficient to employ the discovery rule).

Here, Sidorov has not pled his inability to have made the discovery of multiple insurance policies and information related to those policies by the time he possessed the very paperwork containing these policies.  Sidorov pleads in the complaint that he "was deeply upset at the perceived injustice of the situation and tossed the materials taken from the house in a box in his closet" in 2011, only providing those materials to his counsel in "or about 2014."  FAC ¶ 13.  But this allegation does not explain why Sidorov was unable to review the paperwork he placed in a closet or turn this information over to his attorney at that time.  *See Briosos v. Wells Fargo*

9

*Bank*, No. C 10-02834 LB, 2011 WL 1740100, at *6–7 (N.D. Cal. May 5, 2011) (plaintiff's allegation "that he was in a compromised emotional state" without offering "additional factors or explanation as to how this prevented him from exercising reasonable diligence" insufficient; dismissing claim with prejudice). Moreover, that Sidorov "had not realized the significance of the papers until he spoke with his attorney" has no consequence here. Sidorov had the opportunity to obtain critical information from these documents. *See Fox*, 35 Cal. 4th at 808. Ignorance of the legal theories underlying Sidorov's claims does not pause the start of the statute of limitations period. *See Norgart*, 21 Cal. 4th at 398 n.2. Thus, taking Sidorov's factual allegations as true, the latest date the statutes of limitations could have accrued was December 31, 2011, with a complaint due by December 31, 2013 for any negligence claims or by December 31, 2015 for any contract claims. *See* FAC ¶ 11; Cal. Civ. Proc. Code §§ 335.1, 337(1), 339. Because Sidorov did not file his complaint until December 30, 2016, Sidorov's claims related to Transamerica's alleged conduct in 2003 and 2007 are time-barred.

2. <u>Continuous Accrual</u>

The theory of continuous accrual cannot save Sidorov's claims related to Transamerica's alleged 2003 and 2007 conduct. "[U]nder the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." *Aryeh*, 55 Cal. 4th at 1192. Thus, Sidorov's allegations related to Transamerica's later conduct in 2014, alleging breach of contract and breach of the implied covenant of good faith and fair dealing, cannot revive his otherwise-barred claims, including Sidorov's negligence, negligence per se and wrongful death claims in their entirety and Sidorov's breach of contract and breach of the implied covenant of good faith and fair dealing claims, to the extent those are based on Transamerica's alleged conduct in 2003 and 2007.

3. <u>Equitable Estoppel and Equitable Tolling</u>

Sidorov's reliance on equitable estoppel or equitable tolling also cannot save his claims related to 2003 or 2007 conduct. To assert equitable estoppel, Sidorov must allege a misrepresentation of fact; "a denial of coverage, even if phrased as a 'representation' that the

policy does not cover the insured's claim, or words to that effect, offers no grounds for estopping the insurer from raising a statute of limitations defense." *Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th 1142, 1152 (2001). Here, Sidorov does not plead that Transamerica misrepresented a fact; Sidorov pleads merely that "Transamerica never had any intention of paying the claim" and that "Transamerica had no intention of paying the policy benefits to [Sidorov]" while making "unusual requests" for documents and initiating a "frivolous removal action" interpleading the policy funds. FAC ¶¶ 32–33, 38–39. Sidorov does not plead anything more than Transamerica's asking for documents and pursuing a legal course of action based on the work of "outside counsel." *Id.* ¶ 37. Without having pled the misrepresentation of a fact or facts to him, Sidorov is not entitled to equitable estoppel. "[T]hreadbare" allegations that merely recite Transamerica's intention not to pay will not defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Moreover, Sidorov's claimed period of delay is no longer than the period beginning three months before July 29, 2014, when Sidorov first submitted a claim for the death benefit, to September 26, 2014, when Transamerica interpleaded the policy funds. *See* FAC ¶¶ 18, 38–39; *see* Mot. at 14–15 (contending equitable tolling applies to time between when "the loss is reported to the insurer and the time of the denial of the claim"). This tolling period of approximately five months is not sufficient to close the one-to-three year gap that requires plugging for Sidorov's claims alleging misconduct in 2003 and 2007 to be timely.

Because Sidorov's claims related to the alleged 2003 and 2007 conduct are time-barred, the court need not review the substance of those claims in the face of defendant's motion.

C. <u>Res Judicata</u>

Transamerica claims the doctrine of res judicata prevents Sidorov from raising his claims based on Transamerica's alleged 2014 conduct, including the payment of insufficient interest by Transamerica on the life insurance policy and its failure to include premiums paid by Schultz after Natalya's death. Mot. at 13–14. Sidorov contends Transamerica was never a party to the probate action "and the Probate Court never exercised general jurisdiction over the insurer regarding any of the matters now before this federal court." Opp'n at 15.

"Claim preclusion and res judicata apply to a pending proceeding only when a prior adjudication resolved, or could have resolved, the same cause of action pending in the current proceeding." *Hi-Desert Med. Ctr. v. Douglas*, 239 Cal. App. 4th 717, 733 (2015), *as modified* (Sept. 15, 2015) (citations omitted). "The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." *Id.* (citation omitted). Causes of action are considered the same "if based on the same primary right." *Id.* (citation omitted). "The primary right is simply the plaintiff's right to be free from the particular injury suffered." *Id.* (citation, alterations, and internal quotation marks omitted).

Here, the harm suffered is the alleged underpayment of the life insurance policy proceeds to Sidorov, both in the form of insufficient interest and a failure to include Schultz's premium payments made after Natalya's death. That harm was the exact harm addressed by the Probate Court's order to Transamerica to make payment to Sidorov. FAC ¶ 43; *see also* RJN Ex. B at 5 (Sidorov's Probate Court petition requesting the court "order that Transamerica pay the Policy proceeds to the Estate of Ms. Sidorova"); *id.* Ex. C at 20 (Transamerica's answer referring to "the total Policy proceeds on the life of Decedent have a value of $2,000,000" and stating the "Policy proceeds, plus applicable interest (from January 22, 2010 through September 26, 2014) and premiums paid following Decedent's death, will be deposited with the Court upon the filing of this [answer and] Counterclaim for a total amount of $2,236,327.30"); *id.* Ex. D at 19 (notice of deposit of interpleader funds "in the amount of $2,236,327.30"); *id.* Ex. H at 4 (stipulation between Transamerica and Sidorov to have interpleaded $2,236,327.30 transferred to Estate of Natalya Sidorova); *id.* Ex. J at 3 (order confirming interpleaded funds to "be disbursed to the 'Estate of Natalya Sidorova' forthwith consistent with the parties' agreement"). Here, the relevant records show Sidorov requested the policy proceeds; Transamerica declared the total value, including "applicable interest" and "premiums paid following" Natalya's death was $2,236,327.30; Transamerica and Sidorov stipulated to transferring that amount to Natalya's Estate; and the Probate Court issued an order consistent with that stipulation. *See* RJN Exs. B–D, H, J. Thus, the harm Sidorov asserts was suffered here stemming from Transamerica's 2014

conduct, namely alleged underpayment of the life insurance policy proceeds in light of interest owed and premium payments made after Natalya's death, is identical to the harm addressed by the state court in resolving Sidorov's probate action.

A probate court may hear "causes of action, or matters that are normally raised in a civil action to the extent that the matters are related factually to the subject matter of a petition filed under" Part 19 of the California Probate Code, "which governs conveyances or transfers of property claimed to belong to a decedent or other person." *In re Estate of Kraus*, 184 Cal. App. 4th 103, 110–11 (2010). District courts may be "bound to afford preclusive effect" to "relevant factual findings" and "overlapping legal issues finally determined" by a probate court. *In re Marshall*, 600 F.3d 1037, 1064 (9th Cir. 2010), *aff'd sub nom. Stern v. Marshall*, 564 U.S. 462 (2011) (holding "district court erred when it did not afford preclusive effect to the relevant determinations by the Texas probate court").

In his probate action, Sidorov had the opportunity to contest the amount interpleaded by Transamerica or the amount ordered paid by the court during the probate action; Sidorov could even have pursued a claim of breach of contract as part of his petition. Instead, Sidorov stipulated with Transamerica to the amount transferred to the Estate of Natalya Sidorova. *See* RJN Ex. H at 4–5. Transamerica was a named party in the petition filed by Sidorov in Probate Court, and was directly ordered to "pay insurance proceeds to administrator." *See* RJN Exs. B, G at 2. Thus, claim preclusion bars Sidorov's claims of insufficient interest paid and lack of payment of Schultz's paid premiums after Natalya's death.

Because Sidorov's claims related to Transamerica's alleged 2014 conduct are barred by res judicata, the court does not reach the substance of these claims either.

Transamerica's motion to dismiss is GRANTED as to all claims.

IV. <u>LEAVE TO AMEND</u>

Although "[t]he court should freely give [leave to amend the pleading] when justice so requires," Fed. R. Civ. P. 15(a)(2), the court concludes here that leave to amend would be an "exercise in futility." *Ascon Props.*, 866 F.2d at 1160 (internal citations omitted). An amended complaint could not cure the defects in the complaint reviewed above. Sidorov cannot

change the fact that he obtained and continued to possess the documents relevant to his allegations in 2011 and did not investigate further until 2014. Additionally, Sidorov cannot overcome the claim preclusive effect of the final resolution of his probate action to plead a claim based on Transamerica's alleged 2014 conduct. Leave to amend the complaint is DENIED.

V. CONCLUSION

The court GRANTS the motion to dismiss. *See* ECF No. 40.

The court DENIES leave to amend the complaint.

This case is CLOSED.

IT IS SO ORDERED.

DATED: September 5, 2018.

_____
UNITED STATES DISTRICT JUDGE